Good morning, Your Honors. May it please the Court, Arwin Swink appearing on behalf of Petitioner Parminder Singh. In affirming the immigration judge's decision, including the adverse credibility findings, the Board of Immigration Appeals relied on inconsistencies of a type of which the Court has repeatedly cautioned do not reveal anything about an applicant's truthfulness or fear of return. And let me just get you to the, pardon the expression, the heart of what concerns me on this case. It's true that a date a bunch of years ago is an insignificant thing. But in this case, there were so many inconsistencies on everything, ranging from dates of arrest to dates of schooling. Does there come a point when small inconsistencies aggregated can become significant? Your Honor, I would concede that there may be such a point, but that point has not been reached in this case. Now, I understand that the immigration judge lists a number of purported inconsistencies, but I think it's essential that we can't be blinded by the sheer number of identified inconsistencies or alleged inconsistencies found by the immigration judge, particularly when a number of them are not actually present upon review of the record. Now, the date inconsistencies are the only inconsistencies mentioned by the Board in its decision, which was a pro bono affirmance, indicating that it had reviewed the complete record. But particularly the date inconsistencies were noted by the Board, so that appears to be the focus. But what's key is that these date inconsistencies, the vast majority of them were incredibly minor, 2 to 5 days each, about events that occurred 5 to 7, 8, 9 years prior to the writing of the corroborating affidavits. Counsel, I'll tell you the one that is of greatest concern to me, and that is the dates of his hospitalization. And this is the 1992-1993 sequence, December to January. Can you run through the chronology of what you think are the accurate dates? Yes, Your Honor. Mr. Singh testified consistently throughout his proceedings and consistently with his declaration that he was arrested in February 1992. He was arrested again. I'm talking about the December and January. Yes, Your Honor. Following that, the second arrest occurred, which allowed his release at the end of December 1992, and then he was again re-arrested. Can you give me the exact date? So he was arrested on December 26th. Yes, Your Honor. Gurdev Singh was arrested on December 25th. Yes, Your Honor. He says that he was arrested the following day. Yes, Your Honor. And he was released when, the 27th or 28th? He was released on the 28th. On the 28th. Okay. And then he believes that Gurdev Singh was killed on January 1st. Yes, Your Honor. That was his belief. Okay. And he was arrested when? He was arrested on – I'm sorry, Your Honor. The following arrest was on January 4th, and then he was released on January 5th. Okay. Now, we have evidence that he was – there's some evidence in the record that he says that he was arrested on January 2nd. No, Your Honor. I don't believe that Mr. Singh ever testified he was arrested on January 2nd. Let me confirm. Well, the declaration from his doctor says that Singh was under his care from January 2nd to January 11th. So he couldn't have been under the doctor's care on January 2nd, could he, because he wasn't arrested until January 4th? That's correct, Your Honor. Okay. So the doctor's wrong? Yes, Your Honor. Okay. And what are we to make of that? Well, Your Honor, it's unfortunate that there isn't any testimony elicited about how the doctor's letter was prepared. Because of that omission, it's not clear what records, if any, the doctor was relying on in preparing that report. Mr. Singh was clear, however, that the doctor was in error. And his own consistent testimony throughout the proceedings demonstrated a linear timeline, which the doctor's letter doesn't corroborate, but the doctor was just wrong. Now, that type of mistake in a corroborating document about a date that is so far in the past, under this Court's clear precedent in Singh v. Gonzalez and Shah v. INS. Except haven't those cases in the past relied on inconsistencies within the person's own testimony, that is that they can't be expected to remember a date? But normally someone who is preparing something in writing from other written records, such as a doctor, normally those dates would be expected to be correct because they're not spur-of-the-moment recollections. So why isn't that significant that Mr. Singh's testimony differs from the dates that the doctor gives? Actually, Your Honor, this scenario is precisely the same as that presented in Shah v. INS, which dealt with a date discrepancy in a death certificate, which was different than the date provided by the applicant. Now, the Court noted that the applicant's testimony was internally consistent. And the Shah Court explained that such minor discrepancies in dates that are attributable to typographical errors cannot properly serve as a basis for an adverse credibility finding. While we would hope that the doctor's letter would have been based on independent records, there's no evidence that that was, in fact, the case in this instance. The proper approach in this case is that expressed by the Court in Singh v. Gonzalez, where it noted that the ability to recall the precise dates of events years before they occurred and years after they occurred is an extremely poor test for how truthful a witness's substantive account of the incidents is. And now that case, Singh v. Gonzalez, also dealt with a date discrepancy between the applicant's testimony and the supporting affidavits, much like the situation with the doctor's letter in this case. Now, I understand we've got a lot to cover in this case, but I'd also like to note that the demeanor findings of the immigration judge, to which the Court would normally accord a special type of deference, are not warranting of that particular type of deference here, because the immigration judge provided no specific examples of the alleged hesitancy, reluctance, or nonresponsiveness in this case. There was no individualized analysis conducted whatsoever, which the judge was required to do. Is this a case in which we can look to the immigration judge's findings or not? It seems to me that could matter because of the demeanor finding to which, as you say, to which we normally defer. In other words, are we reviewing only what the BIA said, or are we also reviewing the immigration judge's findings? Under the pro bono affirmance, we would also review the immigration judge's findings. So we can consider the demeanor findings? Yes, Your Honor. So is it your view that an immigration judge has to give a specific example? Let me give you an example. If the immigration judge in a particular case were to say, every time we get to something important, the person looks out the window and taps their feet on the floor and looks really anxious, do we have to have a specific question that the person alludes to, that the immigration judge alludes to, or is that sufficiently specific? Well, if the immigration judge were to provide a specific example, a specific description, that would be sufficient, like the type that Your Honor describes. What the immigration judge cannot do is make vague general assertions about an applicant's demeanor without citing any indication in the record of when that evasiveness occurred or when this alleged hesitancy or nonresponsiveness was going on, because when the immigration does that, as the immigration judge did here, this Court is left with nothing to review. We're not clear from the immigration judge's decision when, if at all, the applicant actually was hesitant. If I could reserve the remainder of my time. Certainly, you may do that. We'll hear next from the Respondent. May it please the Court. Hello and good morning. My name is Tracy Jones, and I'm appearing on behalf of the Respondent, Eric H. Holder, Jr. In this case, the Petitioner entered into the United States as a nonimmigrant visitor and remained longer than permitted. The Petitioner filed an asylum application upon arrival into the United States based on his claims of persecution on account of his political opinion, mainly his membership in the Cali-Dalmont. The immigration judge found that the Petitioner was incredible and denied his application, and the Board adopted and affirmed this decision. This Court should deny the petition for review because the substantial evidence supports the immigration judge's adverse credibility finding, and the record does not compel a contrary conclusion. What do we make of the cases that certainly are numerous from this Court that say that minor discrepancies, particularly about dates, can't support an adverse credibility finding? Yes, that is true, Your Honor. However, in Cuar v. Gonzales, this Court has held that when looking at an inconsistency, the immigration judge in this Court should look at the record as a whole. Regardless if the inconsistency is minor, if it's blatant and pervasive inconsistencies that are found throughout the entire record. What does that mean? What makes it blatant? You know, if the person is off by two days 15 times, does minor become major? Well, Your Honor, in this case, this is not a single isolated inconsistency that occurred. Well, that was true of my question, too. If someone is wrong by two days 15 times, each one of which is obviously minor, does there come a point at which a lot of small, irrelevant or seemingly irrelevant things become relevant? And if so, why? Well, in Sing v. Ashcroft, this Court has upheld the adverse credibility finding where the inconsistencies went to dates, and also the inconsistencies went to the knowledge of the political organization that he belonged to. And that's clearly the instance here in this case. The petitioner provided inconsistency dates not only once, but on numerous times in regards to all the incidents that he allegedly experienced while in India. But what in the government's view is the worst example here, or the most compelling inconsistency with regard to the dates? Well, actually, it's not just one main inconsistency. It's the four inconsistencies that the petitioner provided in regards to his alleged arrest, detentions and release dates. The petitioner argues that when he was first arrested, he was arrested on February 16, 1992, and released on February 17. However, in his own corroborating evidence that the petitioner submitted, which was four affidavits, it stated that the petitioner was actually released on February 19. When presented with this inconsistency and given an opportunity to explain, the petitioner merely stated that, yes, he acknowledges that the affidavits provide an incorrect date. However, that they were all incorrect. How many affidavits did you get with respect to this? We got probably, I can't say off the top of my head, but I know it was more than four affidavits. Okay. And all of them say February 19? The four that he submitted, four of them, yes. These affidavits are from his mother? His mother, family members, a member of parliament, and also the letter that you referred to earlier from Dr. Asahi. That's the same problem we have with the hospital, isn't it? Yes, Your Honor. You end up with those four affidavits all saying that he was arrested on January 2. Yes. And then he says, no, that's clearly wrong, it was January 6. Yes. And also, it's also inconsistent, going back to that certain arrest, that he also provided inconsistent testimony in his declaration that he submitted in conjunction with his asylum application. In his declaration, he stated that he received medical treatment from January 6 to January 15, 1993. However, in his testimony, he stated that he was actually arrested on January 4 and released on January 5, 1993. In Dr. Asahi's letter, it states that he received treatment from January 2 to January 11, 1993. And this is a material inconsistency, because this goes straight to the heart of his claim that he was arrested, detained, and tortured during this time. And it's unclear how he was able to receive medical treatment while during the time that he was allegedly being detained by the police. Also, in looking at the second arrest, his testimony was internally inconsistent. On page 134 of the administrative record, the petitioner states that he was actually arrested on December the 26th. However, when later questioned about the second arrest, he states that he was arrested on December the 16th and released on December the 20th. When questioned further on cross-examination about the second arrest, the petitioner states, recants his previous statements and states that he was arrested on December the 26th. It is reasonable for the immigration judge to think that the petitioner would be able to testify consistently and credibly in regards to incidents that he experienced in his native country. And here, the petitioner just did not do so. In looking at the fourth arrest, which occurred in April of 1995, the petitioner stated that he was arrested and detained. However, the four affidavits that he submitted didn't even mention this fourth arrest. In addition to the inconsistent dates, the petitioner also provided inconsistent testimony in regards to his status as a student. This is a major inconsistency because his first arrest allegedly occurred because of him protesting or sitting in at the police, doing a sit-in at the police station where he, his teacher was actually arrested. In his asylum application, he states that he wasn't a student and has not been a student since 1989. However, in, at the merits hearing, the petitioner states that in 1992 he was a student and that he actually protested his teacher's arrest in front of the police station, and that led to his arrest on February the 16th. The petitioner also gave a discrepancy in regards to the place that he was arrested on April the, April 25th of 1995. He states in his asylum application that he was actually arrested and taken to Indore, India. However, at the merits hearing, he stated that he was actually arrested in Talia, India, and that he, and that he was arrested and taken to Talia and then to Jargon. Do we have any idea how far apart those two cities are? Yes. He stated that they were a few kilometers apart. I mean, is it, are we talking like Minneapolis to St. Paul kind of a problem? That I'm not sure of, Your Honor. However, at the merits hearing, when asked and questioned about why his declaration stated that he was actually detained and arrested in Indore, he stated that he did not know where Indore was located and that he was actually arrested in Talia. And Malhe V. Gonzalez's court has held that geographical discrepancies that go to the heart of the claim support an adverse credibility claim. How does that go to the heart of the claim? Because it's referring to one of the arrests that the petitioner is relying on and establishing his eligibility for asylum. No, but how does it go to the heart of the claim? Does it make any difference which city it was? Well, this one single inconsistency alone might not be sufficient to uphold. So it doesn't go to the heart of the claim? Yes, it does, Your Honor. For the simple fact. That just one single inconsistency might not make a difference. If it doesn't, it doesn't go to the heart of the claim. Yes, that's true, Your Honor. And that was a misstatement on my behalf. This is a material inconsistency that goes to the heart of the claim because it's a general. What about his, what about the I.J.'s demeanor, demeanor finding? You know, Judge Gaber intimated in her question, it's really unexplained. Well, Your Honor, that's not true. In the actual transcript, the immigration judge actually went on the record numerous times stating that the petitioner appeared to be hesitant. The petitioner appeared to be nonresponsive. Even on page 214 of the administrative record, the immigration judge actually stopped the proceedings and instructed the petitioner to listen to the questions carefully and answer them accordingly. Numerous times throughout the transcript, both Petitioner's Counsel and the Government Counsel had to repeat questions numerous times in order to elicit an answer from the petitioner. This Court has held that the immigration judge is in the best position to observe and assess a petitioner's tone and demeanor, and it affords special deference to the immigration judge's demeanor finding. Here, this Court should afford special deference because the record supports the immigration judge's demeanor finding. Well, how could it? The demeanor finding was that the witness was hesitant, and we don't really know what the period of time is between question and answer in a transcript. So how can the transcript certainly doesn't contradict the finding, but how does it support? Well, Your Honor, it supports the finding because throughout the record and throughout the transcript, the immigration judge actually stated times when the petitioner was being nonresponsive. It wasn't as if it was just what the petitioner said or stated that we're assuming that the petitioner was nonresponsive. The immigration judge actually noted on the record that the petitioner was being nonresponsive, and these indications throughout the entire transcript support the immigration judge's demeanor finding. I see my time has concluded. It has. Thank you very much, counsel. Thank you. We'll hear rebuttal. Thank you, Your Honors. I'm concerned when the government suggests that the immigration judge made these notations about demeanor throughout the transcript. In my review of the transcript, I could only find one instance in where the immigration judge noted his perception that Mr. Singh was being nonresponsive, and in that instance, he actually answered the question which was posed to him. Now, granted, it was a convoluted answer, but it was an answer to the question asked directly nonetheless. At no other point in this record was I able to find an instance where the immigration judge indicated the applicant was being nonresponsive. Counsel, I want to return you to the hospital, just as the hospitalization question that I asked you about earlier, just as an illustrative problem. The government points out that Mr. Singh had four affidavits, at least four affidavits, including one from his mother, and these all do have dates in them. And those dates are wrong. Yes. They're all consistent with the doctor, and they're not consistent with Mr. Singh. And Mr. Singh comes and testifies that these dates are all wrong. Now, how could it be that everybody who recalls this recalled it as being January 2nd and recalls the date quite specifically? Doesn't that suggest there's some kind of collusion going on in the preparation of the affidavits, or is it just that everybody misremembers this? Actually, Your Honor, the record demonstrates not collusion, but the fact that the affidavits were all prepared with the same notary on the same day in the same location. So given that we are talking about events which happened years in the past, I don't think it's at all surprising that the affiants would have discussed the issue together when they went to prepare the notarized affidavits. But the doctor did not go to that notary, did he? Unfortunately, Your Honor, there's just no indication as to how the doctor's letter was prepared, other than the fact that it was procured by Mr. Singh's father, who had went to the doctor – I'm sorry, his mother, who had spoken with the doctor directly. And given that it was the mother who spoke with the doctor, the fact that the doctor's letter accords with her own recollection is perhaps not all that surprising. Thank you, Your Honor. Thank you, counsel. We appreciate the arguments of both parties. The case just argued is submitted.
judges: Tashima, Graber, Bybee